# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **KELLY ANDRELL B.,** )<br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**ANDREW M. SAUL,** )<br>**Commissioner,** )<br>**Social Security Administration,** )<br>)<br>**Defendant.** ) | **Case No. 18-CV-207-JFJ** |

## OPINION AND ORDER

Plaintiff Kelly Andrell B. seeks judicial review of the decision of the Commissioner of the Social Security Administration denying his claim for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423. In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

For reasons explained below, the Court reverses the Commissioner's decision denying benefits and remands for further proceedings. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

## I. Standard of Review

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotations omitted). The Court must "meticulously

examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1261 (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, the Commissioner's decision stands so long as it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

Plaintiff, then a 46-year-old male, applied for Title II benefits on August 11, 2016, alleging a disability onset date of May 25, 2016. R. 208. Plaintiff claimed that he was unable to work due to disorders including major depression, post-traumatic stress disorder (PTSD), anxiety, uncontrolled tremors, and chronic body pain. R. 227. Plaintiff's claim for benefits was denied initially on November 29, 2016, and on reconsideration on February 10, 2017. R. 131-135; 137-143. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ conducted the hearing on August 9, 2017. R. 145-146, 45-81. The ALJ issued a decision on September 8, 2017, denying benefits and finding Plaintiff not disabled because he was able to perform other work existing in significant numbers in the national economy. R. 28-44. The Appeals Council denied review, and Plaintiff appealed. R. 1-7; ECF No. 2.

The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2019, and that he had not engaged in substantial gainful activity since his alleged onset date of May 25, 2016. R. 33. The ALJ found that Plaintiff had the following severe impairments: post-traumatic stress disorder (PTSD), cervical spondylosis, and carpal tunnel syndrome in his right upper extremity. *Id.* At step three, the ALJ found that Plaintiff did not have

an impairment or combination of impairments of such severity to result in listing-level impairments.  R. 34-35.

With respect to objective psychological evidence in the record,[1] the ALJ noted Plaintiff's complaints of "memory loss" and "PTSD" during a physical consultative examination performed October 6, 2016 by Jerry First, M.D.[2]  R. 37.  On October 10, 2016, Plaintiff reported to Timothy Doty, Psy.D., for a psychological consultative examination.  R. 37, 416-424.  Plaintiff explained to Dr. Doty that he was unable to work "because of problems related to social situations, anxiety, and post-traumatic reactions to deployment in war settings."  R. 37.  The ALJ then recited Dr. Doty's visit impression summary verbatim:

> Hi [sic] *ability* to engage in work-related mental activities appears moderate.  His *ability* to understand work-related mental tasks appears intact, although there seems to be a neurocognitive affect, perhaps based on depression and anxiety that is preventing him from functioning fully in terms of understanding.  His *memory* performance was moderate as briefly assessed on a mini mental status exam.  His ability to *sustain concentration* in a real-world situation appears poor.  His ability to *persist* in work-related tasks appears poor.  Mr. Burks's mental status, at the time of this ce [sic], suggests that he is cognitively capable of managing disability benefits if he were to receive such.  The veracity and reliability of the information gathered for the purpose of this CE does not seem to include intentional or misleading over/underreporting.  Mr. Burks may benefit from additional evaluation/assessment to more fully understand the disparity between seemingly above average intellectual ability and uncommonly low performance on a mini mental status exam.  He seemed to experience a great deal of difficulty with nominal cognitive tasks.  Perhaps an increase to the intensity of psychotherapy and mental health assistance is necessary.  Otherwise, it would be helpful to rule out concerns related to poor neurocognitive performance.

R. 37, 418 (emphasis in original).  The ALJ then stated that Dr. Doty's "[d]iagnosis notes unspecified depression and anxiety disorder by history; unspecified neurocognitive disorder;

---

[1] The ALJ summarized objective and opinion evidence relative to Plaintiff's physical impairments in the record.  However, Plaintiff makes no allegation of error regarding his physical disorders or their resulting limitations.  Because the ALJ's decision regarding these impairments is not at issue, the Court will not address them.

[2] The ALJ did not assign a specific weight to Dr. First's consultative physical examination opinion.  R. 37.

occupational problems; other history of psychological trauma; and a Global Assessment of Functioning (GAF) score of 51-60, moderate symptoms (Exhibit 6F)." The ALJ gave "this evidence" significant weight, noting Dr. Doty opined that Plaintiff "is capable of managing his own funds." R. 37.

The ALJ then discussed the treating source opinion of John Laurent, M.D. dated July 24, 2017. The ALJ recounted each of the categories Dr. Laurent listed as "marked," and the single "moderate" category before giving the opinion "little weight." R. 37-38.[3] R. 38. The ALJ gave little weight to a 100% service connected disability rating from the Department of Veterans Affairs, noting that the two agencies' disability determination processes are "fundamentally different." R. 38-39. Finally, the ALJ gave little weight to the state agency psychological consultants' mental findings, because "the above residual functional capacity is more consistent with the totality of the evidence." *Id.*

After evaluating the record evidence, the ALJ concluded that Plaintiff has the RFC to perform a reduced range of light work as follows:

> [T]he claimant is able to lift, carry, push or pull up to 10 pounds frequently and 20 pounds occasionally; able to sit for up to 6 hours in an 8-hour workday; able to stand and/or walk up to 6 hours in an 8-hour workday; able to frequently reach overhead; able to frequently handle or finger with the right, dominant upper extremity; able to occasionally climb ladders, ropes or scaffolds; able to perform simple, routine and repetitive tasks; job should provide regular breaks every 2 hours; able to interact with supervisors as needed to receive work instructions; able to [sic] in proximity to co-workers; job should not involve over-the-shoulder type supervision; individual should never interact with the general public; and job should not involve more than ordinary and routine changes in work setting or work duties.

R. 35-36. The ALJ found that Plaintiff was unable to perform any past relevant work. R. 39. Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work, such as Mailroom Clerk, Laundry Sorter, and Assembler. R.

---

[3] Dr. Laurent's opinion is explained in more detail below in the Court's analysis.

39-40.  The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT").  R. 40.  Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy.  *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled.

## III.    Issues

Plaintiff argues that the ALJ failed to properly evaluate the medical opinion evidence regarding Plaintiff's psychological symptoms.  ECF No. 17.  Plaintiff asserts two specific errors: (1) the ALJ failed to give legitimate reasons for assigning Dr. Laurent's treating source opinion little weight, and engaged in improper picking and choosing of records to support the assigned weight; and (2) the ALJ improperly analyzed the opinions of reviewing agency physicians Keith McKee, Ph.D., and Paul Cherry, Ph.D.  *Id.*  The Court finds that the ALJ committed reversible error by failing to properly evaluate the treating source opinion of Dr. Laurent.  Because the treating source opinion needs reevaluation, the remaining opinions may be affected by the outcome of that reevaluation.  Therefore, the Court does not reach the remaining allegation of error.

## IV.    Analysis – ALJ Erred in Treatment of Dr. Laurent's Treating Source Opinion[4]

Generally, the ALJ should give more weight to medical opinions from a claimant's treating sources.  20 C.F.R. § 404.1527(c)(2); *Talbot v. Heckler*, 814 F.2d 1456, 1463 (10th Cir. 1987) (stating that, "opinions of physicians who have treated a patient over a period of time or who are consulted for purposes of treatment are given greater weight than are reports of physicians employed and paid by the government for the purpose of defending against a disability claim")

---

[4] The record reflects Dr. Laurent saw Plaintiff six times in 2016 and 2017.  The Commissioner does not dispute, and the Court finds, that Dr. Laurent should be considered a treating source due to this ongoing treatment relationship.  *See* 20 C.F.R. § 404.1527(a)(2) ("Treating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.").

(quoting *Broadbent v. Harris*, 698 F.2d 407, 412 (10th Cir. 1983)) (quotation marks omitted). Indeed, the ALJ must give an opinion from a treating source controlling weight if it is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record." *Id.* *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

If the ALJ does not give a treating source's medical opinion controlling weight, the ALJ will consider six factors to determine the weight to give the opinion: (1) the examining relationship; (2) the length, nature, and extent of the treatment relationship; (3) supportability of the opinion with relevant evidence; (4) consistency of the opinion with the record as a whole; (5) specialization of the medical source; and (6) any other factors that may support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ must always give "good reasons" for the weight given to a treating source's medical opinion. 20 C.F.R. § 404.1527(c)(2). If the ALJ rejects the opinion, he must give "specific, legitimate reasons" for his assessment, based on an evaluation of all the regulatory factors. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (quotation omitted). Although the ALJ's decision "need not include an *explicit* discussion of each factor," the record must reflect that the ALJ considered every relevant factor in the weight calculation. *Andersen v. Astrue*, 319 F. App'x 712, 718 (10th Cir. 2009). The question for the reviewing court is whether the ALJ's decision contains specific reasons that make clear the weight assigned to the medical source opinion and the reasons for that weight. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (stating that the proper inquiry is whether the reviewing court "can follow the adjudicator's reasoning" and "can determine that correct legal standards have been applied").

Further, an ALJ must generally "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007,

1010 (10th Cir. 1996). Generally, it is "improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004).

In this case, Dr. Laurent completed a medical source statement addressing his opinion of Plaintiff's ability to perform specific work-related mental activities under the broader areas of Understanding and Memory, Attention and Concentration, and Social Interaction, on July 24, 2017. R. 501-503. In this assessment, Dr. Laurent opined under the category of Understanding and Memory that Plaintiff had a marked limitation[5] in his ability to remember locations and work-like procedures, his ability to understand and remember simple instructions, and his ability to understand and remember detailed instructions. R. 501. Under the category of Attention and Concentration, Dr. Laurent opined that Plaintiff had a marked limitation in his ability to maintain attention and concentration for extended periods to perform simple tasks, his ability to maintain attention and concentration for extended periods to perform detailed tasks, his ability to adhere to a schedule and maintain regular attendance, his ability to work closely to others without distraction, his ability to perform at a normal pace without an unreasonable number or length of breaks, and his ability to handle normal work stress. *Id.* Under the category of Social Interaction, Dr. Laurent opined that Plaintiff had a marked limitation in his ability to accept instruction and criticism from supervisors, his ability to work with others without causing distractions, and his ability to maintain socially appropriate behavior and basic standards of neatness and cleanliness. Dr. Laurent also opined under this category that Plaintiff had a moderate limitation in his ability to interact appropriately with the public, noting that Plaintiff "require[s] significant

---

[5] "Markedly Limited" is clearly defined on the form as an "individual cannot usefully perform or sustain the activity." R. 501.

help/redirection, and frequently avoids public spaces." R. 502. Dr. Laurent noted PTSD and major depressive disorder as the supporting diagnoses for his opinion. *Id.*

In discounting Dr. Laurent's opinion, the ALJ stated:

> Dr. Laurent treated the claimant for only a short time, although the claimant was treated longitudinally, but not frequently, at OU Psychiatry from 2014 to 2016. The opinions of the claimant's extreme limitations are not consistent with the medical evidence of record specifically: Dr. Laurent medical evidence of record (Exhibit 1F/15) dated February 2, 2016 motes [sic] the claimant is a new patient for Dr. Laurent; medical evidence of record dated April 5, 2016 (Exhibit 1F/1) notes an outpatient visit for medication management (this is the most recent medical evidence of record from OU Psychiatry); claimant reports not doing well but a Licensed Clinical Social Worker (LCSW) notes improvement; claimant reports going to the gym on a regular routine and his wife reports observing improvement; and the claimant denied nightmares (PTSD) and the doctor notes this is improvement (Exhibit 1F/2-3).

R. 38. Based on this assignment of little weight, the ALJ failed to include the limitations found by Dr. Laurent in the RFC determination.

Although the ALJ gave reasons for discounting Dr. Laurent's opinion, the undersigned concludes the ALJ failed to give "legitimate" and "good" reasons for the weight given to Dr. Laurent's opinions. 20 C.F.R. § 404.1527(c)(2). First, the ALJ's statement that Dr. Laurent treated Plaintiff "for only a short time" is not supported by the record evidence. The record reflects that Plaintiff received regular psychiatric care from O.U. Psychiatry Clinic from June 10, 2014 through April 11, 2017 and that treatment was ongoing. R. 314-357, 504-521. The majority of Plaintiff's care was delivered by Dr. Laurent, who monitored Plaintiff's medication management and treatment progress with diagnoses of Major Depressive Disorder, PTSD, and Alcohol Abuse. *See* R. 327-333, 320-325, 314-318, 504-509, 510-515, and 516-521. In conjunction with several medications, Dr. Laurent noted that Plaintiff was attending therapy sessions with a Licensed Clinical Social Worker.[6]

---

[6] Plaintiff's treatment records indicate he was seeing Amy McAdoo, LCSW, for therapy sessions, but there are no records of these visits available for review.

Second, the ALJ's statement that Plaintiff was only seen by Dr. Laurent "until April 5, 2016," is incorrect. Dr. Laurent saw Plaintiff three additional times. *See* R. 504-521 (October, 2016 visit; January, 2017 visit; April, 2017 visit). This misstatement is significant. In his first three visits with Dr. Laurent, which occurred in February, March, and April of 2016, Plaintiff showed "some improvement" in each diagnosis. *See* R. 314-333. However, in the three remaining visits with Dr. Laurent in October, 2016, January, 2017, and April, 2017, which the ALJ ignored, Plaintiff's condition deteriorated in all areas. *See* R. 504-521 (impression and recommendation for each "problem" diagnosis of Major Depressive Disorder, and PTSD, listed as "deteriorated," or "unchanged"; Alcohol Abuse showed minor improvement due to "limited use" during last three visits). Dr. Laurent's directions listed on the final visit on April 11, 2017, include a direction to return to the clinic for a follow-up appointment in three months, indicating Plaintiff needed to be monitored on a regular schedule for psychiatric care. R. 520. Therefore, the ALJ concluded that Plaintiff's condition "improved beyond" the limitations found by Dr. Laurent in his July 24, 2017, opinion, without discussing and perhaps without considering Plaintiff's decline in the three visits immediately prior to such opinion. R. 38.

Third, a comparison of Dr. Laurent's opinion and treatment records with the opinion of consultative examine Dr. Doty, which the ALJ afforded "significant weight," does not reveal any stark differences. *See* R. 501-503 (Laurent opinion); 314-357, 504-521 (Laurent and O.U. Psychiatry treatment notes); R. 416-424 (Doty opinion). For example, Dr. Doty noted that Plaintiff's ability to sustain concentration in a real world situation, persist in work-related tasks, and socially interact and adapt to work situation demands were all poor. R. 422. These findings are not inconsistent with Dr. Laurent's "marked" limitations in similar categories. R. 501-502.

Accordingly, the Court finds the ALJ's reasons are not legitimate or supported by the record, and that the ALJ used portions of the medical record evidence favorable to his decision

while ignoring other probative evidence. The Commissioner attempts to salvage the ALJ's opinion weight by pointing to more visit notations and anecdotal mentions throughout Plaintiff's visits with Dr. Laurent. ECF No. 19. However, like the ALJ, the Commissioner cites selected portions of the record that support a finding of not disabled while ignoring probative, contrary findings of the treating physician.

The Court also concludes the ALJ's error is not harmless. Harmless error doctrine applies only in the "exceptional circumstance" where the court could confidently say that no reasonable administrative factfinder could have resolved the factual matter in any other way. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). To the extent any harmless-error determination "rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action." *Id.* Here, Dr. Laurent's opinion reflects limitations beyond those considered in the RFC. If the ALJ were to include such limitations, the VE testified all work would be precluded. R. 77.

## V. Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for proceedings consistent with this Opinion and Order. On remand, the ALJ should properly consider the relevant opinions from Plaintiff's treating physician, Dr. Laurent, and any other opinion evidence as necessary, and properly explain the reasons for the weight given to each opinion.

**SO ORDERED** this 11th day of September, 2019.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**